Price, J.
The M. D. Knowlton Company, a creditor residing in Rochester, New York, who holds contracts of conditional sales to Howland as the basis of its several claims, and others who may be termed general creditors, joined in an attack on the validity of the chattel mortgage held by the plaintiffs in error. The said New York *113 company claims superiority over plaintiffs in error, because their mortgage had expired, and over the general creditors, because it held title to the property or goods sold to Howland by virtue of the contracts of conditional sale, and this company is in this court on a cross-petition in error.
It lost recognition of its title in each of the lower courts, for a very substantial reason. The vendor failed to comply with Section 4155-2, Revised Statutes, which prescribes what shall be done where conditional sales are made. The contract must be in writing, signed by the purchaser, with a statement thereon under oath containing the amount of the claim, which contract, or copy thereof, with proper affidavit shall be deposited with the recorder of the county where the party signing the instrument resides, etc., etc. It is entirely clear, if not conceded, that the contracts under consideration were not in compliance with the statute, and by its terms are void as to subsequent purchasers and mortgagees in good faith, and creditors.
It is argued that these contracts were good under the laws of New York and that rules of comity between the states should make them good in Ohio. We think rules of comity can not be recognized to overthrow an express statute of our state. It prescribes a rule of conduct to govern our own citizens, and we do not think that residents of another state should be more favored, unless the statute so permits.
Therefore we affirm the judgment of the lower court on this branch of the case, and which is represented by the cross-petition in error.
*114 We have remaining the one important issue left. What is the standing of the chattel mortgage under which plaintiffs in error claim? It had been duly executed and filed, and contained the affidavit required by Section 4154, Revised Statutes. This mortgage had been executed to plaintiffs in error to indemnify them for becoming sureties for the maker, Howland, on the demand note to the bank for $1,000, and the affidavit properly describes the nature of their liability for him to the bank. The note was executed July 28, 1905, and the affidavit was sworn to on an early day of August the same year.
The statute as to renewal of chattel mortgage, Section 4155, Revised Statutes, provides: “Every mortgage (chattel) shall be void, as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof, unless within thirty days next preceding the expiration of the said term of one year, a true copy of such mortgage, together with a statement verified as provided in the last section, together with a statement exhibiting the interest of the mortgagee in the property at the time last aforesaid, claimed by virtue of such mortgage, is again filed in the office where the original was filed.”
As already stated, this mortgage was never renewed, but it remained on file, and the next incident connected with it happened on October 14, 1907. The evidence shows that on that day the bank demanded of the sureties-mortgagees the payment of this note, and that in compliance with *115 the demand they paid it, and at once resorted to their rights under the unrenewed mortgage by obtaining the key to the plant, closing it and taking possession of the mortgaged property. There is no dispute about the taking possession as alleged, but it is urged that as the Knowlton Company, who sold on condition, .and the other creditors, gave Howland credit at various times after the expiration of the year and before the taking of possession, the latter should confer no right superior to their claims.
This chattel mortgage contained a stipulation not uncommon to such instruments that if “default be made in the above conditions — (one of which was to save the sureties harmless) — or if any secreting or removal from the location, any abuse, or misuse, any sale, any seizure whatever by any process of law, of said goods or chattels, or any part of them, be either made or attempted, by said mortgagor, or by any person or persons claiming under him or in behalf of either or by or in behalf of any creditor or creditors of said mortgagor, or if from any other cause the security shall become inadequate, then said mortgagee or successors may take immediate possession of said property, or any part of it wherever found, and sell the same at public or private sale for the highest price they can obtain and pay indebtedness and expenses. * * * ” It is plainly the law that this instrument was good as between the parties if never filed, and so if filed but not renewed. See Francisco et al. v. Ryan, 54 Ohio St., 307. So we are brought directly to the question, what *116 was the efficacy of taking possession before any other valid lien attached?
It is well enough, at this point, to examine the lang-uage of our statute regulating the filing of chattel mortgages, Section 4150, Revised Statute. It reads: “A mortgage, or conveyance, intended to operate as a mortgage, of goods and chattels, which is not accompanied by an immediate delivery, and followed by an' actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers, and mortgagees in good faith, unless the mortgage, or a true copy thereof, be forthwith deposited as directed in the next section.”
The words “accompanied by an immediate delivery and followed by an actual and continued change of possession of the thing mortgaged,” refer to things necessary to be done if possession or immediate delivery is not made and possession continued without change, and yet it was decided in Wilson v. Leslie, 20 Ohio Report, 161, that a temporary withdrawal of the mortgage from the files is not fatal to the same. The head-note of the case is that “such a mortgage is not void in toto by reason of an omission to make the deposit ‘forthwith’ but becomes effective whenever it is deposited. And in case of a temporary withdrawal of the paper from the recorder’s office, the mortgagee will not be prejudiced by a levy made at the instance of another creditor.” So we are not to so strictly construe this language as to. render the statute practically inoperative. The *117 great purpose of the law is to prevent secret contracts for liens, and to protect creditors who act in good faith in selling to the mortgagor. The spirit of this decision is that, if the mortgagee should not file his mortgage for ten months, and during that time the mortgagor obtains credit, and the mortgagee then files his mortgage duly verified as required by statute, his lien thus obtained will prevail over the claim of the creditors who obtain no lien, but who sold before the mortgage was filed.
In Brown v. Webb, 20 Ohio Rep., 389, we have a case giving another angle from which the law of that day was viewed. The second paragraph of the syllabus is: “A mortgage of personal property, where the mortgagor retains possession by virtue of the mortgage, with a power of sale, is void, as against subsequent purchasers and execution creditors. But when possession is taken by the mortgagee the mortgage becomes valid so as to protect the mortgaged property from execution creditors not having made a levy, and against subsequent purchasers from the mortgagor.”
The changes made in the statute since that decision have not affected the rule so stated, as we may judge from later decisions of this court. In Francisco et al. v. Ryan, 54 Ohio St., 307, it is said that, “a mortgage on a stock of merchandise, though made in good faith to secure a bona fide debt of the mortgagor, when it allows him to retain possession with a power of sale in the course of his business, is ineffectual to create a lien as against creditors of the mortgagor who *118 assert their rights against ■ the property while it remains under his control, but it is valid as between the parties; and when the mortgagee takes possession, either with the consent of the mortgagor given at the time, or under authority conferred by the mortgage, his title becomes complete and the property is no longer subject to legal process issued against the mortgagor, nor liable for his debts except to the extent of any surplus that may remain after the satisfaction of the mortgage debt and proper charges for enforcing the same.”
It would seem that our present question is solved by that decision, and but little need be added now.
Another case recognizing the same principle is Huber Manufacturing Co. v. Sweny et al., 57 Ohio St., 169. Our present views are in harmony with that case also.
These considerations and these cases are not in conflict with Cooper v. Koppes, 45 Ohio St., 625, for there the court was dealing with the results of not verifying and refiling. The fact that the mortgagee took absolute possession under his mortgage, before other creditors obtain any lien, was not involved or decided.
We need not discuss all the Ohio cases. They are cited in the briefs. The mortgage in this case, though not renewed and refiled as directed by law, was still good as between the parties and furnished a strong arm with which the mortgagee took possession, and that too before any other creditor asserted any valid lien.
*119 It is urged that the neglect to renew acted as a fraud on creditors who sold goods after time to renew expired and before possession was taken; but it must be remembered that this was an indemnity mortgage for the protection of sureties on a demand note. Demand may have been made of the maker of the note, but the evidence is, that these sureties paid when demand was made on them and that they promptly took possession. There is no evidence to sustain the charge of fraud.
We think the circuit court erred in its judgment, and it is reversed, and judgment is given here for plaintiffs in error.

Judgment reversed.

Spear, C. J., Davis, Siíauck and Johnson, JJ., concur. Donahue, J., concurs in the first branch of syllabus but not in the second or in the judgment.